# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

THOMAS L. LEE,

                                        Plaintiff,

                                                            DECISION and ORDER

              -vs-

                                                            05-CV-6077

S. WENDERLICH, C. WOUGHTER, DAVID P.
HALLENBECK and IMAN MAMOUN EL-HASSAN,

                                        Defendants

## APPEARANCES

For plaintiff:                        Thomas L. Lee, *pro se*
                                      93-B-2405
                                      Woodbourne Correctional Facility
                                      99 Prison Road
                                      Box 1000
                                      Woodbourne, NY 12788-1000

For defendants:                       Tamara B. Christie, A.A.G.
                                      New York State Attorney General's Office
                                      144 Exchange Boulevard, Suite 200
                                      Rochester, NY 14614

## INTRODUCTION

**Siragusa, J.** This prisoner civil rights case, brought pursuant to 42 U.S.C. § 1983

(2003), is before the Court on plaintiff's motion for partial summary judgment and

defendants' cross-motion for summary judgment pursuant to Federal Rule of Civil

Procedure 56(c). For the reasons stated below, plaintiff's motion is denied and defendants'

motion is granted in part, and denied in part.

**BACKGROUND**

Plaintiff is a Muslim inmate who is currently incarcerated at Woodbourne Correctional Facility. Plaintiff alleges that when he was incarcerated at the Elmira Correctional Facility ("Elmira"), defendants violated his rights under the First and Fourteenth Amendments, as well as his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (Compl. at 1-6.) Prior to the celebration of the month of Ramadan in 2004, plaintiff was informed by defendants of the rules and regulations applicable to celebrants of that Muslim holiday. One of the rules stated:

> If you intentionally miss (3) call-outs during Ramadan, we will presume that you wish not to participate, and therefore, your name will be taken off the list.

(Hallenbeck Declaration (# 25), at 10.) On October 26, 2004, plaintiff was notified that his name was removed from the Ramadan service list after missing three call-outs. (Motion for Partial Summary Judgment, Lee Affidavit (# 20) at 4.) On October 30, 2004, plaintiff filed an inmate grievance complaint challenging the actions of Acting Deputy Superintendent of Security S. Wenderlich ("Wenderlich"), Deputy Superintendent of Programs C. Woughter ("Woughter"), Assistant Deputy Superintendent of Programs David P. Hallenbeck ("Hallenbeck") and Muslim Chaplain Imam Mamoun El-Hassan ("Imam"):

> The complaint arise [sic] challenging the actions of Acting Dep. Security, Mederlich [sic], Dep. Sup. Programs C. Woughter, Assist., Dep. of Programs Hallenbeck, and Imam El-hassan. [sic] The subject is a devout muslim [sic] of thirty years. Registered and aproved [sic] to participate in "Ramadan." Thereafter, Lee had been allowed into the mosque at appox. 8:15 p.m., to shower and pray the "tarawith prayer," Because [sic] Lee is a cook for ramadan. [sic] Now on October 26 and 27th [sic], I was denied acess [sic] into the masjid at night for the tarawith paryer [sic].

As Lee was coming for [sic] the kitchen after cooking the meal. [sic] I was told that my name had been removed from the ramdan [sic] list because I had missed "three days" from [sic] coming to the mosque. I told the assigned officers that there must be some kind of mistake, [sic] I was then told to return to my housing area I then complyed [sic]. Again on October 28th[,] Lee took a day off from the dutys [sic] in the kitchen, and went to recreation for one hour and then proceeded to the mosque, and was once again told that my name had been taken off the ramadan [sic] list because I had missed three days[.] I then was told to return to my cell. As a result I was denied the right to partake in ramadan [sic] (prayer) and was denied the evening meal. As well as the benefit of the spiritual educational goal. [sic]

The actions of the above mentioned employees and Imam El-Hassan; [sic] removing inmate from the ramadan [sic] list for missing "three days" is in violation of ones [sic] First Amendment right under the United States Constitution and Correction Law 601 Moreover, [sic] tese [sic] violate (RLUIPA).

(Inmate Grievance Complaint attached to Compl. at 9.) The Inmate Grievance Complaint also requested the following actions:

Requests that a full hearing be conducted and that those responsible answer this grievance supporting there [sic] position[.] That my name and all others similarly situated be placed by on the ramadan [sic] list[.]

(*Id*.) On November 5, 2004, plaintiff received a response from Hallenbeck:

Your name was removed from the list because of excessive unexcused absences. If you have a legitimate reason for any of your absences, please contact me with a full explanation.

(*Id*. at 23.) Plaintiff did not respond to Hallenbeck's letter. On December 9, 2004, plaintiff received a response from the grievance clerk denying his complaint. Specifically, the response noted:

The Committee can not recommend grievant's action requested due to the response being responded to approximately 27-days later; due to the Imam being on vacation during the 27-days for response.

(*Id*. at 11.) The Grievance Committee's decision was upheld by the Superintendent on November 3, 2004. On December 22, 2004, plaintiff appealed the Superintendent's decision to the Central Office Review Committee ("CORC"). *See Hemphill v. New York*, 380 F.3d 680, 682 (2d Cir. 2004) (reviewing DOCS grievance procedure under N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7(c)(4)). On January 12, 2005, plaintiff's appeal request was unanimously denied by CORC, which stated:

> Contrary to the grievant's assertions, CORC has not been presented with sufficient evidence to substantiate any malfeasance by staff.

(Inmate Grievance Complaint attached to Compl. at 13.) Plaintiff asserts that as a result of defendants' actions, he was denied his right to participate in Ramadan service for twenty-three days. Plaintiff has moved for summary judgment as to defendants Imam and Woughter. Defendants oppose plaintiff's motion and cross-move for summary judgement as to plaintiff's claims against all defendants.

## STANDARDS OF LAW

### *Summary Judgment Standard*

The standards for deciding a summary judgment motion under Fed. R. Civ. P. 56 are well established. Summary judgment shall be granted if the pleadings and supplemental evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under the rule, the burden is on the moving party to inform the Court of the basis for the motion and to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has carried that burden, the nonmovant

4

"must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e) (alteration in original)). At the summary judgment stage, when perusing the record to determine whether a rational fact-finder could find for the nonmovant, the Court must draw all reasonable inferences in favor of the nonmovant. *See Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955 (1988). In their Notice of Cross-Motion (# 23) filed on March 23, 2006, defendants informed plaintiff of the need to respond to their motion pursuant to *Irby v. New York City Transit Authority*, 262 F.3d 412 (2d Cir. 2001), and of the need to file a separate statement of facts, pursuant to Local Rule of Civil Procedure 56.1. Pl.'s Notice of Motion (# 23), at 1-2. Moreover, because plaintiff is proceeding pro se, the Court reads his pleadings "liberally and interpret[s] them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (citation and internal quotation marks omitted). However, the application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment. *Lee v. Coughlin*, 902 F.Supp. 424, 429 (S.D.N.Y.1995).

### *Section 1983*

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  In order to state a claim under § 1983, plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived

plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993).

### First Amendment Standard

Prisoners have a constitutional right to participate in congregate religious services. *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir.), *cert. denied*, 492 U.S. 909 (1989). Yet, a prisoner's right to practice his religion is not absolute. *See Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.), *cert. denied*, 498 U.S. 951 (1990). Constitutional protections extend to prisoners insofar as the inmates must be given "reasonable opportunities . . . to exercise the religious freedom guaranteed by the First and Fourteenth Amendment[s]." *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972).

The standard set forth in *Turner v. Safley*, 482 U.S. 78 (1987), for assessing a claim that prison officials impermissibly infringed on an inmate's free exercise of religion, requires the Court to consider whether the officials' conduct "is reasonably related to legitimate penological interests." *Id.* at 89; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987). Specifically, four factors must be considered:

> (1) whether there is a rational relationship between the regulation and the legitimate government interests asserted; (2) whether the inmates have alternative means to exercise the right; (3) the impact that accommodation of the right will have on the prison system; and (4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest.

*Salahuddin v. Coughlin*, 993 F.2d 306, 308-09 (2d Cir. 1993) (quoting *Benjamin*, 905 F.2d at 574).

### *Procedural Due Process Standard*

A procedural due process analysis proceeds with two questions. "The first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted). The Supreme Court held six years later, in *Sandin v. Conner*, 515 U.S. 472 (1995), that,

> Following *Wolff*,[1] we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause…. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, …nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin*, 515 U.S. at 483-84 (citations omitted).

### *Equal Protection Standard*

The equal protection clause directs state actors to treat similarly situated people alike. *See Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To prove an equal protection violation, claimants must prove purposeful discrimination, *see McCleskey v. Kemp*, 481 U.S. 279, 292 (1987), directed at an identifiable or suspect class. *See Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 457-58 (1988).

### *Religious Land Use and Institutionalized Persons Act Standard*

Congress enacted the Religious Land Use and Institutionalized Persons Act ("RLUIPA") in response to the Supreme Court's holding in *City of Boerne v. Flores*, 521

---

[1] *Wolff v. McDonnell*, 418 U.S. 539 (1974).

U.S. 507 (1997), declaring unconstitutional the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1(b). RLUIPA applies both to programs or activities that receive federal financial assistance and to substantial burdens on religious exercise having an effect on interstate commerce. 42 U.S.C. § 2000cc-1 (b); *see also Mayweathers v. Terhune*, No. Civ. S961582LKKGGHP, 2001 WL 804140, *3, 2001 U.S. Dist. LEXIS 22300, *1 (E.D. Cal. July 2, 2001) (describing RLUIPA and sustaining its constitutional validity). The statute provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution...even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

> Under RLUIPA, once a plaintiff produces prima facie evidence to support a free exercise violation, the plaintiff bears the burden of persuasion on whether the regulation substantially burdens the plaintiff's exercise of religion and the state bears the burden of persuasion on all other elements.

*Cancel v. Mazzuca*, No. 01 Civ. 3129(NRB), 2003 WL 1702011, *6 (S.D.N.Y. Mar. 28, 2003).

### Personal Involvement of Supervisory Officials

For a claim against state officials in their personal capacity to survive, a plaintiff must demonstrate "personal involvement of defendants in alleged constitutional deprivations . . . ." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted); *see also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) ("The rule in this circuit is

8

that when monetary damages are sought under § 1983, the general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required.").

Personal involvement of a supervisory official may be established:

[B]y evidence that: (1) the [official] participated directly in the alleged constitutional violation, (2) the [official], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the [official] created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the [official] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the [official] exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.

*Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d 246, 254 (2d Cir. 2001) (alterations in original) (quoting *Colon*, 58 F.3d at 873).

### *Qualified Immunity Standard*

Where federal claims are involved, "qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)); *see also Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) ("A government employee sued in her individual capacity for damages arising out of her performance of discretionary functions is entitled to qualified immunity where it was objectively reasonable to believe that her acts did not violate clearly established federally protected rights."). Under this formulation, all government officials are protected from liability in connection with their official acts provided that "it is objectively reasonable for

[them] to believe that [they are] acting within constitutional and statutory bounds." *Zahra*, 48 F.3d at 686 (quoting *Natale v. Town of Ridgefield*, 927 F.2d 101, 104-05 (2d Cir. 1991)).

## DISCUSSION

After thoroughly analyzing the claims presented by plaintiff and by defendants in support of their respective motions for summary judgment, the Court determines that neither is entitled to summary judgment on the basis of the First or Fourteenth Amendments, or RLUIPA.

### First Amendment Claim

Addressing plaintiff's First Amendment claim, as stated above, four factors must be considered. Each will be discussed separately below.

### 1. Rational relation to a legitimate penological interest

Plaintiff argues that the three-absence rule had no rational relation to a legitimate penological interest. In his response to defendants' motion for summary judgment, plaintiff contests the validity of defendants' claim of conserving financial and administrative resources by enforcing the three-absence rule. Specifically, he states:

> 19. The plaintiff 42 U.S.C. § 1983 does not challenge the constitutionality of the "Ramadan Mubarak" rules and regulation[s] for ramadan [sic]. Although the Ramadan Mubarak rules and regulations are evidentiary in nature. [sic] For example, on p.2 paragraph 6 states "a list of all Muslims will be given to Mr. Fletcher (food service manager) to assure the (count) of meals to prepare. Please contact the Imam for any questions."
>
> 20. Therefore, their [sic] was no "financial resources" being wasted as the defendants contend in there [sic] response. See (Declaration of El-Hassan and David Hallenbeck).

10

(Pl.'s Rule 56 Statement in Resp. to Defs.' Mot. for Summ. J. (# 33) at 5-6.) This statement seems to undermine plaintiff's argument that defendants' enforcement of the three-absence rule was not sufficiently related to penological interests. Plaintiff states that there was a list created and based on this list, a set number of special Ramadan meals would be prepared. Logically, if plaintiff failed to show up for these meals, the financial resources put into making them would seem to go to waste. Furthermore, plaintiff does not put forth any facts regarding the financial impact, if any, of missing these meals. Therefore, plaintiff has not met his burden of showing there was no legitimate penological interest in conserving financial and administrative resources by defendants' enforcement of the three unexcused absence rule.

With regard to this first factor of First Amendment analysis, defendants contend that they had a legitimate penological interest in implementing the three un-excused absence rule. In his declaration in support of defendants' motion, Hallenbeck listed several reasons why the three un-excused absences rule is used:

> Allowing the inmates to participate in religious programs at the facility requires administrative accommodations as well as financial resources necessary to maintain the program. The purpose of the three (3) un-excused absences rule is to ensure that the administrative and financial resources necessary to implement and maintain the religious program(s) are not being wasted on inmates who do not sincerely wish to participate.

(Hallenbeck Declaration at 7.)

Rules designed to enforce the conservation of administrative and financial resources have been recognized by courts as a legitimate penological interest. *Orafan v. Goord*, 411 F. Supp. 2d 153, 167 (N.D.N.Y. 2006). In *Orafan*, prison officials denied Muslim inmates a separate Shiite service. The Court found it was reasonably related to legitimate

11

penological interests because a separate service would have adversely impacted security, staffing and fiscal policies. *Id.* Specifically, prison officials submitted proof in admissible form that:

> DOCS would have to increase the number of staff personnel, who would be required to escort inmates to and from the service as well as monitor the service. Increasing security staffing would result in an increase in work hours and overtime, which would constitute a significant payroll expense in a difficult fiscal climate. Identifying a separate space for the service would "pose a very difficult problem," especially because the two prayer services would need to occur at the same time, therefore possibly requiring an additional Mosque at each facility.

*Id.*

Here, however, the Court finds that Hallenbeck's declaration contains merely a conclusory statement. In *Orafan*, prison officials laid out specific reasons why not accommodating the prisoner's request would impose difficulties on their fiscal and administrative services. Defendants do not provide specific facts regarding the financial and administrative burden sought to be avoided. Therefore, defendants have not met their burden of showing a legitimate penological interest in conserving financial and administrative resources by their enforcement of the three unexcused absence rule.

### 2. Alternative means of exercising the right to religious freedom

Plaintiff nowhere alleges that he was left without an alternate means of celebrating Ramadan. Therefore, plaintiff has not met his burden on this second factor of First Amendment analysis.

Defendants claim that plaintiff did have an alternative means to exercise his religious rights:

> From the evidence presented thus far, it is clear that, although he was removed from the Ramadan service list, plaintiff could have still practiced Islam. He could still pray and study. He could have worn religious clothing.

He could have continued to avoid violations of religious rules. Finally, plaintiff could have been placed back on the Ramadan service call-out list, if he had provided Hallenbeck with a reason for missing the three Muslim meals.

(Hallenbeck declaration at 7.) In *Withrow v. Bartlett*, 15 F. Supp. 2d 292 (W.D.N.Y. 1998), the Court found that the plaintiff, who had been denied the opportunity to pray in the recreational yard with other Muslims, had an alternative means of exercising his right to religious freedom. The Court based its reasoning on an affidavit of the ministerial program coordinator, who was the Islamic affairs specialist employed by DOCS:

According to Imam Umar, DOCS has established programs for Muslim inmates, and those programs do accommodate the inmates' five daily religious obligations. As Umar indicated in his affidavit, the five daily prayer requirements can be met by way of formal prayer or informal prayer, if formal prayer is not practical at a particular time and place. The formal prayer can be made up at another time. Inmates may pray when they wake, at various times during the day in their cells, and at night before they sleep. Plaintiff was allowed to go back to his cell during the recreational period, where he could engage in demonstrative prayer, or he could participate in group prayer in the Mosque or attend Muslim study groups at designated times and places. Plaintiff also had the option to remain in the yard, perform nondemonstrative prayer there, and make up his formal prayer obligation at some other time.

*Id.* at 296.

In this case, though, it is unclear from defendants' declaration whether plaintiff could have properly celebrated the holiday of Ramadan as a result of their three-absence rule. In *Withrow*, a religious leader testified that there was an alternate way for plaintiff to practice his religion.  Here, in contrast, defendants merely assert, with no factual support, that plaintiff had a legitimate alternative means of celebrating Ramadan. Consequently, the Court finds that defendants have not met their burden of showing that plaintiff had an alternative means of exercising the right to religious freedom.

### 3. Impact of the requested accommodation on the prison system

The third factor in First Amendment analysis requires the Court to determine the effect of the three-absence rule on administrative and financial resources within the prison system. First, the Court notes that plaintiff has not submitted any proof in admissible form to show that allowing him to attend the Ramadan service, despite his three prior absences, would have no negative impact on the prison system.

As previously discussed in the first factor (rational relation to a legitimate penological interest), defendants have not met their burden of proving a significant negative impact. Defendants failed to submit any evidentiary proof showing the exact nature of administrative and financial resources that would be depleted as a result of a failure to enforce the three-absence rule.   Thus, neither plaintiff nor defendants have submitted proof in admissible form to show their entitlement to judgment on this factor.

### 4. Absence of ready alternatives

The final factor is whether there are alternatives to enforcement of the three-absences rule that would accommodate the inmate, but also be consistent with DOCS' legitimate concerns. As for the plaintiff, he has not submitted any proof in admissible form to establish an absence of ready alternatives, which would permit him properly the celebration of the month of Ramadan. With regard to defendants, they have not offered proof of an alternative means of celebrating Ramadan. They have only alleged in conclusory fashion that plaintiff was not restrained from practicing Islam. This is an insufficient basis for the Court to find that there were sufficient alternatives.

Therefore, the Court determines that neither plaintiff nor defendants have met their burden of demonstrating that they are entitled to judgment as a matter of law with respect to plaintiff's First Amendment claim.

### Procedural Due Process Claim

Although plaintiff has not specifically claimed a procedural due process violation, the Court is required to give a liberal reading to pro se complaints. *See Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001). In plaintiff's reply memorandum, he states:

> And even if the court were to find that prison officials['] instrest [sic] of administrative and financial resources are justified. [sic] Then how would a prisoner who may have been absent for the Ramadan services, and who has a legitimte [sic] explanation to know whom to contact about ant [sic] that he may have missed? Or does he have to wait until his name is removed from the Ramadan list before tring [sic] to have his name place [sic] back on the call out list. The Ramadan rules and regulation [sic] does not provide a mechanism for anyone who may have been absent from the Ramadan services due to any of the above mentioned reasons.

(Pl.'s Mem. of Law in Resp. to Defs.' Mot. for Summ. J. (# 33) at 6.) The Court will now analyze this claim under *Sandin v. Conner*, 515 U.S. 472 (1995).

The first question *Sandin* asks whether there exists a liberty or property interest which has been interfered with by the State. *Sandin*, 515 U.S. at 477-78. The Court determines that by denying plaintiff the right[2] to have his name on the Ramadan service list, defendants have interfered with plaintiff's liberty interest. The second question posed is whether the procedures attendant upon that deprivation were constitutionally sufficient. *See Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). Defendants have

---

[2]The Supreme Court stated that, "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin*, 515 U.S. at 483-84. Here, the Court assumes, only for the purpose of analysis of this claim, that such a right has been created.

repeatedly stated that they gave plaintiff an alternate means of addressing his claim through an informal method.

> On or about November 5, 2004, I responded to inmate Lee's complaints about being removed form the Ramadan list. In particular, I advised inmate Lee that his name was removed from the list because of excessive unexcused absences. I advised inmate Lee that if he had a legitimate reason for any of his absences, he should contact me with an explanation.

(Hallenbeck Declaration at 2.) However, according to DOCS's regulations, an inmate is not required to settle a grievance through informal channels:

> An inmate should seek assistance in resolving a complaint through a guidance unit, program area directly affected, or other existing channels, informal or formal, prior to submitting a formal grievance. However, a facility may not require the use of a "pre-exhaustion" procedure as a condition for filing a grievance. The failure of an inmate to attempt to resolve a problem on his/her own must not preclude the initial submission of the grievance. An inmate should be encouraged to attempt to resolve a problem on his/her own. Failure to do so may result in the dismissal and closing of the grievance at the IGRC hearing.

7 N.Y.C.R.R. § 701.3(a) (2006). Furthermore, the Court finds it significant that plaintiff's grievance was delayed an additional twenty-seven days simply because the Imam was on vacation. This is longer than the proper time period for handling grievances as stated in DOCS's regulations. 7 N.Y.C.R.R. § 701.7(a)(4) (2006) (requiring a hearing within seven working days after receipt of the grievance, and a decision within two working days of the hearing). Therefore, there exists the possibility that the enforcement of the three-absence rule may impact on plaintiff's procedural due process rights. However, since neither side has specifically addressed this issue, or requested judgment on it, the Court will not make a determination as to whether plaintiff's procedural due process rights were in fact violated.

***Equal Protection Claim***

Nowhere does plaintiff submit evidence in admissible form that he was treated differently from others similarly situated as a result of intentional or purposeful discrimination. *Giano*, 54 F.3d at 1057. Therefore, plaintiff is not entitled to judgment on his equal protection claim.  On the other hand, since defendants have shown that plaintiff will be unable to meet his burden of proof at trial on this claim, defendants are entitled to judgment on plaintiff's Equal Protection cause of action.

***Religious Land Use and Institutionalized Persons Act***

Even assuming *arguendo* that he has established a prima facie free exercise claim, plaintiff has presented insufficient evidence to show that his right to exercise his religion was substantially burdened. As stated above in the First Amendment discussion, nowhere does plaintiff even allege that he was left without an alternate means of celebrating Ramadan. Defendants have shown that plaintiff will be unable to meet his burden of proof at trial on this claim, defendants are entitled to judgment on plaintiff's RLUIPA claim.

***Personal Involvement***

Defendants Wenderlich and Woughter assert that claims against them should be dismissed because plaintiff has failed to show their personal involvement. As stated above, five separate ways exist to establish personal involvement.  The Court will proceed to analyze each in turn.

First, a plaintiff may establish  that a defendant participated directly in the alleged constitutional violation. *Johnson*, 239 F.3d at 254. Here, plaintiff has not submitted evidentiary proof that Wenderlich or Woughter had any direct participation in a claimed constitutional violation.

Second, a plaintiff may establish that a defendant, after being informed of the violation through a report or appeal of the disciplinary action, failed to remedy the wrong. *Id*. Here, after plaintiff filed his grievance, he was afforded a full inmate grievance hearing and was also allowed to appeal to the Superintendent. Although, plaintiff alleges that on October 20, 2004, he "wrote a cover letter to all of the defendant(s) [sic] in this complaint, inquiring as to why my name had been removed from the ramadan [sic] service list." (Compl. ¶ 13.), "the mere receipt of a letter of complaint from an inmate is insufficient to establish personal involvement and liability under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Further, plaintiff has failed to submit evidentiary proof in admissible form that either Wenderlich or Woughter was actually involved in the grievance process. Thus, plaintiff has not shown personal involvement through this second means.

Third, a plaintiff may establish that a defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom. In his affidavit, plaintiff states that:

> [i]t is a [sic] undisputed material fact that . . . C. Woughter "created" the 'Elmira Correctional Facility Guidelines for (Muslim) Ramadan 2004', and has personal knowledge of his 'policy'.

(Lee Affidavit at 3.) Because plaintiff has submitted undisputed evidence in admissible form of Woughter's involvement in the alleged constitutional violation, defendants are not entitled to dismissal of the claims against Woughter due to lack of personal involvement. However, plaintiff does not allege that Wenderlich was involved in making the policy underlying the alleged constitutional violation. Therefore, the Court will continue the analysis of the last two factors only with regard to Wenderlich.

Fourth, a plaintiff may assert that a defendant was grossly negligent in supervising subordinates who committed the wrongful acts. *Johnson*, 239 F.3d at 254. Here, plaintiff does not allege any facts suggesting that Wenderlich was grossly negligent.

Fifth, a plaintiff may assert that a defendant exhibited deliberate indifference to the rights of others by failing to act on information indicating that unconstitutional acts were occurring. *Id.* Here, there is no allegation that Wenderlich was ever informed of the conduct of which plaintiff complains.

Accordingly, defendants have shown that plaintiff failed to establish personal involvement by Wenderlich. Therefore, the claims against him must be dismissed. On the other hand, plaintiff has met his burden of showing Woughter's personal involvement. Consequently, claims against him may go forward.

### Qualified Immunity

The uncontested facts show that defendants have established a rule that if a Ramadan celebrant missed three call-outs during Ramadan, his name would be removed from the Ramadan service list. On its face, the Court finds that the rule is not violative of plaintiff's constitutional rights. Moreover, the evidentiary proof establishes that defendants were following this rule when they removed plaintiff's name from the list.

Where federal claims are involved, "[q]ualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)); *see also Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) ("A

government employee sued in her individual capacity for damages arising out of her performance of discretionary functions is entitled to qualified immunity where it was objectively reasonable to believe that her acts did not violate clearly established federally protected rights."). Under this test, government officials are protected from liability in connection with their official acts provided that "it is objectively reasonable for [them] to believe that [they are] acting within constitutional and statutory bounds." *Zahra*, 48 F.3d at 686 (quoting *Natale v. Town of Ridgefield*, 927 F.2d 101, 104-05 (2d Cir. 1991)). "A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established…." *Elder v. Holloway*, 510 U.S. 510, 515 (1994) (citation omitted).

In considering the issue of qualified immunity, the Court concludes that an inmate's right to attend Ramadan service is clearly established. *Muhammad v. San Joaquin County Jail*, No. CIV S-02-0006 LKK CMK P, 2006 WL 1282944, *7 (E.D. Cal. May 10, 2006). *See also, Smith v. Violi*, No. No. C-92-20202-RMW, 1995 WL 150465, *3 (N.D. Cal. Mar. 31, 1995) ("as a matter of law, that the law requiring the availability of after-sundown meals during Ramadan to Muslim prisoners who request then is clearly established.") ("This court therefore finds, as a matter of law, that the law requiring the availability of after-dark kosher meals during the Islamic holy month of Ramadan to Muslim prisoners who request them is clearly established."). Since plaintiff has alleged that he was denied a meal after sundown,[3] he has raised a material question of fact which impacts on the question of qualified immunity.  However, as stated above, the parties have not briefed this procedural

---

[3]"I was denied the right to partake in ramadan [sic] (prayer) and was denied the evening meal." (Inmate Grievance Complaint attached to Compl. at 9.)

due process issue. Consequently, there is finds insufficient evidence for the Court to determine that defendants did not violate this established right of which a reasonable person would have been aware.  Therefore, defendants' application for dismissal based upon qualified immunity is denied.

## CONCLUSION

For the reasons stated above, defendants cross-motion (# 23) is granted to the extent that plaintiff's claims against Wenderlich are dismissed for lack of personal involvement. Plaintiff's motion (# 20) for partial summary judgment, and defendants' cross-motion (# 23) for summary judgment, are, in all other respects denied.

IT IS SO ORDERED.

Dated:   September 21, 2006
             Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge